United States District Court
District of Massachusetts

| | |
|---|---|
| TONY B. GASKINS,<br>     Plaintiff,<br><br>     v.<br><br>THOMAS DICKHAUT and<br>AMY OWENS,<br>     Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No.<br>)   11-10782-NMG<br>)<br>)<br>)<br>) |

## MEMORANDUM & ORDER

GORTON, J.

Plaintiff is currently an inmate at the Massachusetts Correctional Institution in Norfolk, Massachusetts ("MCI-Norfolk"). Defendants are the superintendent and treasurer, respectively, of the Souza-Baranowski Correctional Center ("SBCC"), where plaintiff was previously incarcerated. In his civil rights complaint plaintiff alleges that defendants, through their actions and their policies, denied him meaningful access to the courts. Defendants now move to dismiss that complaint.

### I. Background

Plaintiff alleges that, in April, 2011, individuals in defendants' employ at SBCC returned to him and refused to mail five letters he had addressed to defense attorneys from whom he sought assistance with respect to his sixth motion for a new trial. Thereafter, plaintiff failed to retain the services of an attorney to represent him in that appeal which he ultimately lost

-1-

while proceeding <u>pro</u> <u>se</u>.

He also challenges certain alleged injurious prison regulations which provide that the subject correctional facilities will pay the postage for only three letters per week sent by indigent inmates. <u>See</u> 103 Code Mass. Reg. § 481.10 (2013). The regulations permit indigent inmates to send an unlimited number of letters, where necessary, to court officials. <u>Id.</u> Inmates are not indigent, for purposes of that regulation, if they have in their prison account during the preceding 60 days more than $10 plus the cost or fees sought to be waived. <u>See</u> <u>id.</u> at § 481.06. The term "court official," as used in that regulation, is not expressly defined. <u>See</u> <u>id.</u>

In July, 2012, the Court allowed defendant's first motion to dismiss for failure to state a claim on the grounds that plaintiff failed to plead an actual injury but dismissed his claims without prejudice to afford him the opportunity to correct the noted defects in his pleadings. Plaintiff timely filed an Amended Complaint reasserting his claims. Defendants now move to dismiss those claims on the grounds that (1) plaintiff's allegation of poverty is untrue or, in the alternative, (2) plaintiff's allegations fail to state a claim upon which relief can be granted.

II. **Motion to Dismiss Proceeding In Forma Pauperis**

Defendants move to dismiss all of plaintiff's claims

pursuant to the in forma pauperis statute, 28 U.S.C. § 1915, because plaintiff allegedly made an untrue allegation of poverty.

### A. Allegations of Poverty

Under the Prison Litigation Reform Act of 1995, prisoners must pay the filing fees and costs associated with filing an action in district court. Vann v. Comm'r of N.Y. City Dep't of Correction, 496 F. App'x 113, 114 (2d Cir. 2012). Notwithstanding that general rule, a district court may permit a prisoner to proceed in forma pauperis, without prepayment of filing fees, although he must still pay the filing fee over time when and as the funds in his prison account exceed $10. See generally 28 U.S.C. § 1915.

Should the district court determine that the prisoner's "allegation of poverty is untrue," however, it shall dismiss the case. See id. § 1915(e)(2)(A). The purpose of that mandatory dismissal provision is to "weed out the litigants who falsely understate their net worth" in order to obtain in forma pauperis status to which they would not otherwise be entitled. White v. Schriro, Civ. No. 11-5285, 2012 WL 1414450, at *3 (S.D.N.Y. Mar. 7, 2012) (quoting Cuoco v. U.S. Bureau of Prisons, 328 F. Supp. 2d 463, 467 (S.D.N.Y. 2004)). An allegation of poverty is untrue and dismissal is appropriate where a plaintiff "misrepresents [his or] her financial arrangements in bad faith," such as when an IFP applicant conceals a source of income to gain access to a

court without prepayment of fees. <u>Cuoco</u>, 328 F. Supp. 2d at 468 (concealing $13,500 settlement received three weeks prior to IFP certification rendered allegation of poverty untrue).

**B.   Application**

Defendants contend that plaintiff has falsely understated his net worth by maintaining a low account balance in his institutional account despite purportedly having access to significant disposable income.  In 2003, plaintiff received a payment of $15,400 as the result of a legal settlement.  Shortly thereafter, he sent $11,000 of that sum to two different bank accounts outside of the prison and another $2,000 to his spouse. It is unclear how much of those outside funds remain but records of his institutional account reveal that, as recently as 2011, plaintiff received more than $1,000 in deposits from an account maintained by one of those outside banks.  Plaintiff has also spent over $4,100 from his prison account in the two years preceding the filing of the instant motion, including $1,200 at the prison canteen.  Two state courts, considering similar evidence, dismissed cases he brought while proceeding <u>in forma pauperis</u> on the grounds that he perpetrated a fraud upon the court. See <u>Gaskins</u> v. <u>Dickhaut</u>, Civ. No. 2009022218C, 2012 WL 4049124 (Mass. Super. July 29, 2012); <u>Gaskins</u> v. <u>Amand</u>, Civ. No. 07-2267 (Mass. Super. Oct. 31, 2007).

The Court makes no finding, at this juncture, that

plaintiff's application seeking in forma pauperis status was made in bad faith. On his application, plaintiff indicated that his only source of income over the past 12 months was payments from his family and friends and that he could not estimate what amount that would be during the ensuing year. The record with respect to plaintiff's application permits inferences in favor of either party: that plaintiff deliberately omitted mention of outside bank accounts within his control to misrepresent his net worth or that plaintiff now relies only upon his family and friends for income because the settlement he received ten years ago has been exhausted. Because the Court has not conducted a hearing on this issue and the circumstantial evidence and record of prior dismissals does not compel the Court to find, in this instance, untoward or dishonest conduct, the Court will proceed to a consideration of the merits.

### III. Motion to Dismiss the Mail and Indigency Claims

Defendants alternatively move to dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) on grounds that neither the return of plaintiff's letters nor the current indigent mail policies violate his constitutional right to access the courts. For the reasons that follow, defendants' motion will be allowed.

#### A.   Standard

To survive a motion to dismiss for failure to state a claim

under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter" to state a claim for relief that is actionable as a matter of law and "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 667 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if, after accepting as true all non-conclusory factual allegations, the court can draw the reasonable inference that the defendant is liable for the misconduct alleged. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). Although courts are to construe liberally the allegations of pro se plaintiffs and review them under a more forgiving standard, courts must refrain from conjuring up unpled allegations to give life to a phantom cause of action. McDonald v. Hall, 610 F.2d 16, 19 (1st. Cir. 1979).

    B.    **Right to Access the Courts**

As the Court previously stated, inmates have a constitutional right of access to the courts which includes the right of indigent inmates to mail certain legal documents free of charge. See Bounds v. Smith, 430 U.S. 817, 824-25 (1977). To state a constitutional claim under Bounds, a plaintiff must 1) identify a policy or practice that denies inmates meaningful access to the courts and 2) allege that the specific policy or practice actually hindered him from pursuing a legal claim. See Lewis v. Casey, 518 U.S. 343, 350-51 (1996).

Construing that precedent, the First Circuit Court of Appeals has explained that the right of meaningful access to the courts is

> narrow in scope. [It] does not extend to enabling prisoners to litigate with maximum effectiveness once in court. [Nor does it] require the provision of counsel in civil cases.

Boivin v. Black, 225 F.3d 36, 42 (1st Cir. 2000) (internal citations and quotations omitted). Rather, an inmate has meaningful access to the courts when he has the ability to "prepare a petition or complaint." Carter v. Fair, 786 F.2d 433, 435 (1st Cir. 1986).

The second prong requires a showing of actual injury, which is satisfied when the inmate demonstrates that a "nonfrivolous legal claim [that] had been frustrated or was being impeded." Lewis, 518 U.S. at 353.

**C. Application**

Plaintiff claims that (1) defense attorneys should be considered "court officials" for purposes of 103 Code Mass. Reg. § 481.10 and (2) the definition of indigency should be adjusted to permit higher balances in institution accounts. The implication of plaintiff's contentions, as recognized by the Massachusetts Court of Appeals when confronted with virtually the same claim concerning the construction of "court official," is to grant indigent inmates the right to solicit assistance from an unlimited number of defense attorneys at the expense of the penal

institutions (and, ultimately, the taxpayers). See Cepulonis v. Superintendent, 782 N.E.2d 1136, at *1 (Mass. App. Ct. 2003).

The Court is not convinced that plaintiff's asserted right to solicit unlimited counsel falls within the "narrow" right of access to the courts which, as the First Circuit has stated expressly, does not include a right to counsel for civil claims. Boivin, 225 F.3d at 42 (quoting Lewis, 518 U.S. at 360). Unlike the inmates in both Bounds and Lewis, plaintiff does not complain that he lacked access to legal materials and, in any event, the current policies permit indigent inmates to solicit legal assistance from at least three attorneys each week at the institution's expense.

Even assuming that plaintiff's claim falls within the scope of a constitutional right, plaintiff cannot show that any of the challenged policies actually frustrated or impeded his legal claim because his sixth motion for a new trial was rejected on the merits by the trial court. The judicial officer concluded that, inter alia, plaintiff's claims were so insufficient as to "border[] on the frivolous". See Commonwealth v. Gaskins, Crim. No. ESCR1991-18642, Docket Number 155 (Mass. Super. Sept. 28, 2011) (rejecting claimed error in jury instruction where jury convicted on alternate ground).

Two salient points spring from the trial court's decision. First, even assuming that plaintiff's letters had been mailed and

reached an attorney who agreed to take his case, there is no reason to believe that even Clarence Darrow could have changed the outcome of plaintiff's appeal. Second, Gaskins' claim was not so impeded as to amount to a constitutional injury as imagined in Lewis. That case was concerned with library resources so inadequate as to prevent the inmate from filing a complaint or cause the dismissal of a claim based upon a technical requirement. See Lewis, 518 U.S. at 351. As another session of this Court aptly concluded,

> [b]eing deprived a legal victory for a claim is not synonymous to being deprived access to the courts to resolve that claim.

Hoffenberg v. Fed. Bureau of Prisons, 2004 WL 2203479, at *13 (D. Mass. Sept. 14, 2004).

### ORDER

In accordance with the foregoing, defendant's motion to dismiss (Docket No. 31) is **ALLOWED** and the case is **DISMISSED with prejudice**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated June 14, 2013